In re **GRAND JURY INVESTIGATION**, Liberato J. Maratea, a Witness.
Appeal of Liberato J. **MARATEA**, a Witness.

No. 71-1159.

United States Court of Appeals, Third Circuit.

Argued March 4, 1971.

Reargued En Banc April 5, 1971.

Decided June 14, 1971.

As Amended July 9, 1971.

Adams, Circuit Judge, dissented and filed opinion.

David Rudovsky, Philadelphia, Pa., for appellant.

Robert L. Keuch, Chief Appellate and Civil Litigation Section, Internal Security Division, Department of Justice, Washington, D. C., for appellee.

Before HASTIE, Chief Judge, and ADAMS and GIBBONS, Circuit Judges.

Reargued Before HASTIE, Chief Judge, and SEITZ, VAN DUSEN, ALDISERT, ADAMS, GIBBONS and ROSENN, Circuit Judges.

Before SEITZ, Chief Judge, and HASTIE, VAN DUSEN, ALDISERT, ADAMS, GIBBONS, and ROSENN, Circuit Judges as amended.

## OPINION OF THE COURT

### PER CURIAM:

On December 2, 1970, appellant was called as a witness before the United States Grand Jury in the Eastern District of Pennsylvania which was conducting an investigation of possible violations of 18 U.S.C. § 1952 (1964), as amended, 18 U.S.C. § 1952(b) (Supp. V, 1970) (interstate and foreign travel or transportation in aid of racketeering enterprises). He refused to answer questions relating to the investigation, asserting his privilege against self-incrimination. After appropriate notice and hearing, on January 25, 1971, the district court entered an order pursuant to 18 U.S.C. § 2514 (Supp. V, 1970) granting appellant transactional immunity from prosecution, and directing him to appear before the Grand Jury, answer all questions propounded to him relating to the investigation and produce any books, papers, or other evidence requested. On January 27, 1971, appellant appeared before the Grand Jury and

refused to answer certain questions on the ground that to do so would place his life and security in grave danger from persons who had threatened him. Following this refusal, on due notice a hearing was held which resulted in an order adjudging appellant in civil contempt and directing his imprisonment until he purged himself of contempt by testifying. From that order this appeal is taken.

At the hearing on contempt counsel for appellant called to the district court's attention that the Grand Jury's investigation followed and resulted from extensive electronic surveillance conducted by government agents pursuant to court order. No motion for suppression was made pursuant to Title III, Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2518(10) (Supp. V, 1970), appellant's then counsel being of the view that a grand jury witness lacked standing to make such a motion in the Grand Jury proceeding.[1] On appeal appellant contends that the contempt order should be reversed and the case remanded for a hearing, prior to an adjudication of civil contempt, on the validity of the order permitting electronic surveillance. Appellant contends, further, that if the surveillance was illegal he should be privileged not to testify before the Grand Jury about the contents of any intercepted communication or any evidence derived therefrom.

Appellant's view of the applicability of 18 U.S.C. § 2515 to grand jury witnesses has been accepted by this court. In the Matter of Joques Egan No. 71–1088 (filed May 28, 1971). The district court must, before adjudging a grand jury witness in civil contempt, afford to that witness a hearing on his contention that he is privileged not to testify because his testimony would constitute a disclosure by the Government of the contents or fruits of illegal electronic surveillance directed against him. Even though appellant's counsel, in mistaken reliance on Carter v. United States, *supra*, may have waived such a hearing, such a waiver may not be relied upon to give validity to the ongoing coercive effect of the civil confinement order.

The order adjudging appellant in civil contempt and directing his imprisonment will be vacated and the cause remanded to the district court for further proceedings consistent with this opinion. The mandate will issue forthwith.

ADAMS, Circuit Judge (dissenting):

In this case appellant declined to testify, asserting his Fifth Amendment rights to remain silent. He then received "transactional" immunity but persisted in refusing to testify because such testimony, *in his opinion*, would have placed him in great danger from unnamed persons whom he claimed might retaliate against him. The District Court did not consider this an appropriate basis for excusing appellant from testifying, and cited him for con-

---

1. Appellant's counsel referred to Carter v. United States, 417 F.2d 384 (9 Cir. 1969), cert. denied 399 U.S. 935, 90 S.Ct. 2253, 26 L.Ed.2d 807 (1970) (Tr. 12). Later he said:

"My position would be this:

I do not *at this point* allege that these wire taps and that this information has been secured in an illegal manner, and it being so any inquiry by the grand jury and any immunity and attempt to gain testimony from Mr. Maratea is based upon—is illegal." (Emphasis supplied.) (Tr. 15.)

"What I was getting at, Your Honor, and I think Your Honor can appreciate my argument, is that I stand—at least at this point, if I were to go to trial in defending an individual indicted in this case indicating to the Court that I would wish to challenge the admissibility of the evidence on the basis of its legality [sic]. Of course, this is a different situation. This is only in the grand jury stage, and there is no provision by which defense attorneys can challenge the evidence or the testimony or any information that the U. S. Attorney may have in presenting to the grand jury." (Tr. 16–17.)

tempt. At the contempt hearing it was indicated, for the first time, that the grand jury investigation followed and resulted from electronic surveillance conducted by Government agents pursuant to court order, and directed at appellant.

No motion to suppress had been filed and no suggestion was ever made by appellant that the court order had been improperly entered or that the electronic surveillance was beyond the bounds authorized by the court order. Nor was there any claim either in the District Court or on the appeal that the Fourth Amendment rights or Fifth Amendment rights of appellant had not been asserted because of a lack of knowledge regarding such rights.

Indeed, the notes of testimony of the contempt hearing reveal that Maratea's counsel was specifically aware that court-ordered wiretapping was the basis for the questioning before the grand jury. The Assistant United States Attorney suggested to Maratea's counsel that a motion pursuant to 18 U.S.C.A. § 2518(10) (a) might be made in order that the warrant, and its underlying affidavit, authorizing the wiretaps might be examined in an adversary hearing. Counsel squarely rejected this suggestion.

On January 27, 1971, counsel for Maratea explained to the Court that he had reviewed the affidavits supporting the warrants authorizing interception of communication to which Maratea was a party. Counsel stated,

> "*I do not at this point allege that these wiretaps and that this information has been secured in an illegal manner,* and it (sic) being so any inquiry by the grand jury and any immunity and attempt to gain testimony from Mr. Maratea is based upon—is illegal." (N.T. January 27, 1971, p. 15.) [Emphasis added.]

On the same day the Attorney for the Government stated,

> "The second issue raised by Mr. Shantz is a question of the basis of the grand jury interrogation that is arising out of wire taps that were conducted by special agents of the Federal Bureau of Investigation.

> "Mr. Shantz is correct, it was the basis of almost entirely all of the information that we have that motivates us to question Mr. Maratea. The wire taps in both cases were authorized by judges of this court; in one case Chief Judge Lord, and the other case, Judge C. William Kraft, Junior.

> "Mr. Shantz said that until an indictment is handed down there would be no way he could attack the legality of them. This is incorrect. The statute under which Section 25–16, 17 and 18 of Title 18, provide a statutory proceeding whereby anybody aggrieved, and the court decisions include anybody whose voice has been—whose communications have been intercepted; anyone aggrieved may apply to the court for suppression of the proceeds of the wire taps and may apply for an order preventing their use anywhere, including grand jury proceedings. It has been done in other proceedings—in other jurisdictions. I'm not sure in this jurisdiction. That is the application. I don't know of any suppressions yet, but the statute does provide a regularized lawful orderly procedure whereby any individual may apply to the courts for judicial review of the previously court authorized wire tap and for suppression if as a result of that judicial review the wire tap is found to be improperly authorized or improperly executed." (N.T. January 27, 1971, pp. 26–27).

Moreover, Maratea was present and in fact consulted with his attorney at the hearing when his counsel declined to raise any rights he might have had under the Omnibus Crime Control Act of 1968, 18 U.S.C.A. §§ 2515, 2516, 2517, 2518. At the hearing Maratea took the

witness stand and in response to questions from his own attorney made it clear that the basis for his refusal to testify was his fear of physical harm from unnamed members of the public.[1]

In In Grand Jury Proceedings, Harrisburg, Pennsylvania: In the Matter of Joques Egan (Third Circuit, filed May 28, 1971), the majority opinion pointed out at page 4 that the appellant there specifically had alleged in the District Court that *illegal* electronic surveillance and other *illegal* practices had been employed against her.[2] Therefore *Egan* is distinguishable from the present case, and I see no reason to extend the holding of *Egan*.

On a showing such as the one made by appellant here, I believe there is no basis, at this point, to reverse the judgment of contempt or to order an Alderman-type hearing.

Such decision does not reach the question whether Maratea by virtue of the ongoing nature of a judgment of civil contempt may in the future retract his waiver and compel an Alderman hearing in the District Court. In view of the present record of this case, I think it would be unwise to reverse the District Court for failing to hold a hearing which Maratea declined to request, although he was completely cognizant of the fact such hearing might have been conducted.

---

1. "By Mr. Shantz:

"Q. Mr. Maratea, have you not heard the information that was related to this Court in reference to the proceedings before the United States Grand Jury this morning?

"A. I have heard.

"Q. And have you also heard the arguments that I have made to His Honor in reference to the situation which you are now facing?

"A. Yes, I did.

"Q. Now, did you hear when I represented to His Honor that the basis by which you refuse to testify this morning is predicated on the fact that you felt that any testimony you might give before that grand jury with specific reference to the three named individuals might, could or would cause physical damage to either you or any member of your family?

"Q. Is that a true statement of fact?

"A. Yes, that's true."

(N.T. January 27, 1971, p. 19).

2. "Before the grand jury once again, Sister Egan refused to testify on several grounds, one of which is her primary contention on appeal—that the information which caused the Government to subpoena her and which prompted the questions propounded to her flowed from *illegal* wiretapping and electronic surveillance."

Sister Egan had objected, before the grand jury, to the questions, inter alia, as follows:

"A. I respectfully decline to answer the question on the following grounds: * * *.

"Four, the evidence on the basis of which I have been named as a non-indicted co-conspirator, subpoenaed to testify and answer questions was secured by *illegal* wiretaps. In addition, all or some of the telephone communications monitored by the United States Government involve communications within the Roman Catholic Church of America and specifically between my provincial headquarters and the offices of the church in New York, Rome and throughout the United States."